UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FRIENDS OF ANIMALS, INC.**,<br><br>                  Plaintiff,<br><br>          v.<br><br>**S.M.R. JEWELL, et al.**,<br><br>                  Defendants. | Case No. 15-cv-01500 (CRC) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Friends of Animals, Inc., a non-profit animal-advocacy organization, challenges final written decisions by the U.S. Department of the Interior's Bureau of Land Management ("BLM") to remove 167 wild horses from contiguous sections of Colorado's White River Resource Area.[1] Friends of Animals claims that BLM has violated the National Environmental Policy Act ("NEPA") by omitting from its decisions a full discussion of the physical, behavioral, and social impacts on the wild horses from using helicopter drive trapping or helicopter-assisted roping to gather and remove them. Before the Court can address that issue, it must first resolve a dispute between the parties regarding the completeness of the administrative record in this case—specifically, Friends of Animals's motion to supplement the record with a declaration by

---

[1] Although Friends of Animals describes these removal efforts as "planned," Compl. ¶ 57, the Court notes that the removal operation of these 167 wild horses began on September 16, 2015 and concluded on September 24, 2015. See Status Report, Colo. Wild Horse & Burro Coalition v. Jewell (D.D.C. Sept. 17, 2015) (No. 14-cv-1454), ECF No. 23; Final Status Report, Colo. Wild Horse & Burro Coalition v. Jewell (D.D.C. Sept. 25, 2015) (No. 14-cv-1454), ECF No. 34. A live controversy still exists, however, to the extent that Friends of Animals is correct that one of the challenged decisions "authorizes the *continued removal* of wild horses for *several years* using a variety of approaches including helicopter drive trapping, helicopter assisted roping, and bait and water trapping." Compl. ¶ 10 (emphases added). Defendants have not disputed this characterization.

Dr. Bruce Nock, a researcher and professor at the Washington University School of Medicine, along with two internal BLM emails that it believes BLM has improperly withheld under the attorney-client privilege.

Because the Court finds that the Nock declaration is not necessary for it to assess whether BLM appropriately considered all relevant environmental factors in making its decision, the Court will deny Friends of Animals's motion with respect to the declaration. The Court finds, however, that BLM has not adequately justified its invocation of the attorney-client privilege with respect to the two emails. The Court will therefore order BLM to produce those emails for *in camera* review.

### I.   Background

As the Court detailed in a separate opinion in a related case, see Colo. Wild Horse & Burro Coalition v. Jewell, 130 F. Supp. 3d 205 (D.D.C. 2015), Congress enacted the Wild Horses Act ("WHA") in 1971 out of solicitude for unclaimed horses and burros roaming on public lands, which it extolled as "living symbols of the historic and pioneer spirit of the West." 16 U.S.C. § 1331. The Act (as later amended in 1978) entrusts the Secretary of the Interior—and through her, BLM—with preserving these animals in their native rangelands, while also ensuring that thriving wild-horse populations not disrupt the "natural ecological balance of all wildlife species which inhabit such lands." Id. § 1333(a). BLM is therefore directed to set "appropriate management levels"—optimal population ranges—for horses inhabiting public lands, regularly inventory these animals to determine whether an "overpopulation" exists, and "immediately remove" such "excess animals" as necessary. Id. § 1333(b)(1)–(2).

This case centers on BLM's management efforts in the White River Resource Area, a large swath of public land in northwest Colorado. On July 28, 2015, BLM issued records of

decision stating its intent to gather and remove up to 167 wild horses from one portion of the Resource Area and the remainder (if necessary) from a nearby portion of the Resource Area. After a notice-and-comment period, the agency addressed the likely environmental impacts of its proposed gathers by issuing a Finding of No Significant Impact ("FONSI") for both areas. BLM's FONSI for one of the areas was accompanied by a contemporaneously produced Environmental Assessment ("EA"), and the agency relied on a prior EA from 2011 to justify the issuance of a FONSI as to the other area. See Colo. Wild Horse, 130 F. Supp. 3d at 209–10.

A different set of plaintiffs filed suit on September 4, 2015 in this Court and moved for a preliminary injunction to halt the proposed gathers, which were scheduled to begin ten days later, on the grounds that BLM had violated both the WHA and NEPA. The Court denied the motion on September 15, 2015, following an evidentiary hearing. See id. at 209. In this suit, filed the same day that the Court denied the preliminary-injunction motion, Friends of Animals seeks to invalidate BLM's records of decision on a slightly different ground: that BLM failed to consider the short- and long-term health impacts on wild horses of being subjected to these gathers. Pl.'s Mem. Supp. Mot. Supplement 5.

In support of its claim, Friends of Animals points to public comments submitted to BLM that referenced, cited, or included portions of a 2010 article written by Dr. Bruce Nock, entitled "Wild Horses, The Stress of Captivity." Id. at 4. This article purports to "describe the intricate physiological events that take place within a wild horse subject to these roundups." Id. at 3. It also identifies certain long-term health consequences to wild horses that may result from the stress of these events. Although the article "was submitted to the agency in public comments on [BLM's] roundup decision" and is therefore part of the administrative record, id. at 4, Friends of Animals seeks to supplement the record with a declaration prepared by Dr. Nock that elaborates

upon his 2010 article in certain respects.  Considering this declaration, Friends of Animals contends, will assist the Court in determining that BLM's environmental review improperly disregarded this consequence of the gathers.

**II.     Standard of Review**

Judicial review of agency action is generally confined to the administrative record as designated by the agency.  See Hecht ex rel. James Madison Ltd. v. Ludwig, 82 F.3d 1085, 1095 (D.C. Cir. 1996).  "The administrative record includes all materials compiled by the agency that were before [it] at the time the decision was made."  Id.  And "absent clear evidence to the contrary, an agency is entitled to a strong presumption of regularity, [i.e.,] that it properly designated the administrative record."  Pac. Shores Subdivision v. U.S. Army Corps of Eng'rs, 448 F. Supp. 2d 1, 5 (D.D.C. 2006).  As a result, courts "do not allow parties to supplement the record 'unless they can demonstrate unusual circumstances justifying a departure from this general rule.'"  City of Dania Beach v. FAA, 628 F.3d 581, 590 (D.C. Cir. 2010) (quoting Tex. Rural Legal Aid v. Legal Servs. Corp., 940 F.2d 685, 698 (D.C. Cir. 1991)); see also Cape Hatteras Access Pres. Alliance v. U.S. Dep't of Interior, 667 F. Supp. 2d 111, 115 (D.D.C. 2009) ("[T]here are certain limited, and highly exceptional, circumstances when a court may review evidence beyond the administrative record.").  Departures from the general rule should be made "sparingly" and typically "only [in] those cases where extra-record evidence [is] necessary to make judicial review effective."  Cape Hatteras, 667 F. Supp. 2d at 115.

In this Circuit,

> [t]he record can be supplemented in three instances: (1) if the agency "deliberately or negligently excluded documents that may have been adverse to its decision," (2) if background information [is] needed "to determine whether the agency considered all the relevant factors," or (3) if the "agency failed to explain administrative action so as to frustrate judicial review."

City of Dania Beach, 628 F.3d at 590 (quoting Am. Wildlands v. Kempthorne, 530 F.3d 991, 1002 (D.C. Cir. 2008)).

**III.    Analysis**

    A.    Nock Delcaration

Friends of Animals seeks to supplement the administrative record with the Nock declaration, which discusses the consequences to wild horses of the stress they experience during BLM roundups.  The inclusion of this declaration in the administrative record is appropriate, according to Friends of Animals, primarily because it is needed to determine whether BLM "failed to consider a factor relevant to its final decision."  Pl.'s Mem. Supp. Mot. Supplement 7.  Specifically, Friends of Animals contends that the Court should order that the declaration be included as part of the administrative record to assess whether BLM inappropriately disregarded and failed to respond to research "show[ing] that the stress encountered during the roundup can put the horse[s] 'on a path of accelerated deterioration,' leading to long-term physical and mental health problems, and a shortened life expectancy."  Pl.'s Reply 3 (quoting Nock Decl. Ex. B at 8).  For its part, BLM vigorously disputes that it failed to consider both the short- and long-term effects of stress on horses' health created by helicopter-assisted gathers.  Defs.' Opp'n Mot. Supplement 9.

While the Court does not presently evaluate whether BLM inappropriately excluded this environmental factor from consideration, the Court has before it all the information necessary to make this determination at the merits stage.  Friends of Animals recognizes as much.  See Pl.'s Reply 4 ("[I]t might very well be that the Court could determine through review of Dr. Nock's 2010 paper alone that BLM's analysis of stress falls short.").  Indeed, the parties appear to agree that the relevant information contained in "the 2010 Article attached to the Nock declaration is

already contained in the administrative record in multiple places," Defs.' Opp'n Mot. Supplement 8; Pl.'s Reply 3, meaning that the Court will be able to consider Dr. Nock's research in making its final ruling. Furthermore, as BLM observes, "[t]he Nock Declaration . . . does not cite any new studies, give new opinions[,] or contain a discussion of the physiological effects of stress on horses beyond the research presented in the 2010 Article." Defs.' Opp'n Mot. Supplement 9 (citing Nock Decl. ¶¶ 1–25); see also Pl.'s Reply 3 ("Dr. Nock's declaration is not seeking to introduce new evidence beyond what is published in his 2010 article."). Friends of Animals wants the Court to "hear[] directly from Dr. Nock about his concerns over BLM's failure to consider his work" in order to "provide more credibility to [its] claims," Pl.'s Reply 4, but bolstering a plaintiff's credibility is simply not a permissible reason to supplement the administrative record with an expert declaration. And even if Dr. Nock's declaration may be marginally helpful to the Court in understanding his research, it is by no means essential. This is most assuredly not a case where the Court must "resort to extra-record information to enable judicial review to become effective." Esch v. Yeutter, 876 F.2d 976, 991 (D.C. Cir. 1989).

Friends of Animals argues that this Court has allowed supplementation of the administrative record in a similar case, but the opinion it cites only undermines its claim. See Pl.'s Mot. Supplement 11. In American Wild Horse Preservation Campaign v. Salazar, the Court ordered supplementation of the administrative record with four expert declarations, including one by Dr. Nock, in a challenge to BLM's decisions to authorize roundups in Nevada. See 859 F. Supp. 2d 33, 44 (D.D.C. 2012). According to Friends of Animals,

> [j]ust as here, the American Horse plaintiffs' comments on [BLM's] proposed action "relied heavily on the Expert Declarations," and the comments included "lengthy excerpts of the Expert Declarations." . . . In American Horse, this Court admitted the expert declarations because, as here, "background information was needed to determine whether the agency considered all the relevant factors," or

6

>because "the agency failed to explain administrative action so as to frustrate judicial review . . . ."

Pl.'s Mot. Supplement 12 (quoting Am. Wild Horse, 859 F. Supp. 2d at 38, 42). Friends of Animals's analogy misses the mark. The Court in that case ordered the record supplemented with four specific declarations of which "the agency was aware . . . and in possession" prior to issuing its decision and "on which the Plaintiffs relied extensively in their comments." Am. Wild Horse, 859 F. Supp. 2d at 44. None of that is true here. The Nock declaration in this case was prepared for this litigation on March 25, 2016, Nock Decl. ¶ 25, well after the close of the comment period, and was obviously not in the possession of BLM during that time. Nor did Friends of Animals or any other commenter rely on the Nock declaration in making their comments. The reasoning in American Wild Horse may imply that Dr. Nock's 2010 *article* could appropriately be considered as part of the administrative record, because BLM was aware of it during the comment period, commenters relied on and quoted from it extensively, and it provides important background information. As the Court has already discussed, however, there is no dispute that the 2010 article—or at least any relevant information in it—makes up part of the administrative record. The case on which Friends of Animals relies provides no justification for supplementing that record with a largely unnecessary declaration expounding upon that article.

Because this case does not present an "exceptional circumstance where supplementation of the Administrative Record is appropriate," Am. Wild Horse, 859 F. Supp. 2d at 43, the Court will deny Friends of Animals's motion to supplement the administrative record with the Nock declaration.

B.     Privileged Emails

Friends of Animals also seeks to supplement the administrative record with two emails that BLM withheld as being subject to the attorney-client privilege. The privilege log submitted by BLM does not, however, justify applying the privilege to the two emails in question, and the elaboration in BLM's briefing only muddies the waters. As a result, the Court will order BLM to produce the emails for *in camera* review to determine whether BLM has properly invoked the privilege.

"The attorney-client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services [and] . . . communications from attorneys to their clients if the communications 'rest on confidential information obtained from the client.'" Tax Analysts v. IRS, 117 F.3d 607, 618 (D.C. Cir. 1997) (quoting In re Sealed Case, 737 F.2d 94, 98–99 (D.C. Cir. 1984)). In the administrative context, "the 'client' may be the agency and the attorney may be an agency lawyer." Id.

BLM's privilege log states that an email was sent on March 30, 2015 from BLM staff member Melissa Kindall to another BLM staff member, Heather Sauls, neither of whom is an attorney. The log describes the document as "Email – Fwd. Wild Horse Gather 0023-EA 0024-DNA Review." Defs.' Opp'n Ex. 1, at 2. This information is plainly insufficient to support an inference that this email contains confidential communications between an agency official and an agency lawyer involving legal advice. And while BLM explains in its opposition that agency counsel was "includ[ed]" on this email and that "Ms. Kindall requested review of documents related to the gather at issue in this litigation," Defs.' Opp'n 15–16, that explanation still falls short. Given the uncertainty surrounding this email, the Court will order the agency to submit it for *in camera* review rather than order BLM to produce a revised privilege log. See Oceana, Inc.

v. Locke, 634 F. Supp. 2d 49, 51 (D.D.C. 2009) (*in camera* review appropriate for documents withheld from the administrative record on the basis of attorney-client privilege), rev'd on other grounds, 670 F.3d 1238 (D.C. Cir. 2011).

Similarly, the privilege log states that an email was sent on February 23, 2015 from Ms. Sauls to BLM staff member Kent Walter, again, neither of whom is an attorney. The log describes the document as "Email – SOL Assistance with Horse Comments." Defs.' Opp'n Ex. 1, at 1. BLM failed to discuss this email in its opposition, instead defending the application of privilege to a separate email sent on February 25, 2015. Recognizing its mistake—and after Friends of Animals filed its reply—BLM filed a notice of errata and explained for the first time that the document in question "begins with an e-mail from Ms. Sauls to Mr. Walter requesting assistance coordinating legal review of documents subject to NEPA." Defs.' Errata 2. The document also evidently "includes a response to this request from BLM agency counsel." Id. The privilege log, however, does not show any email from agency counsel being sent, and, moreover, Friends of Animals has not had the opportunity to respond to this statement. In the interest of efficiency, the Court will order BLM to produce this email for *in camera* review as well.

### IV.  Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that [16] Plaintiff's Motion to Supplement the Administrative Record be **DENIED** with respect to the Declaration of Dr. Bruce Nock.  It is further

**ORDERED** that, no later than May 6, 2016, Defendants produce for *in camera* review the emails dated February 23, 2015 and March 30, 2015, as reflected in their privilege log.

**SO ORDERED**.

CHRISTOPHER R. COOPER
United States District Judge

Date:   May 3, 2016